FRANCO OINS ET AL., PLAINTIFFS, *v.* CANEJA, DEFENDANT AND
APPELLANT (JONES, BISHOP, ETC., INTERVENOR AND APPEL-
LEE).

APPEAL from the District Court of San Juan, Section 1, in
in an Action of Debt.

No. 1630.—Decided June 29, 1918.

ANNUITY—CHARGES AGAINST ESTATE—TAXES.—Although section 1525 of the
Civil Code imposes upon the person paying an annuity the duty of paying
the taxes and other charges affecting the estate charged with the annuity
and provides that when he pays the income he may deduct therefrom the
part of the charges to be paid by the annuitant, this rule is not absolute but
depends upon whether the annuitant is obliged to pay any charges.
    Considering the terms in which it is enacted as the final expression of
the will of the legislative power, section 298 of the Political Code does not
charge the annuitant with the payment of any taxes, for in prescribing that
in assessing real estate no deduction shall be made for annuities as against
the owner, it manifestly excepts only such annuities and other liens as were
created between January 31, 1901, and March 10, 1904, when the amendment
was approved, in which exceptional cases the annuitant is charged with
the payment of the taxes. It does not appear that the Legislature intended

that the taxes paid by the owner of the property should constitute a payment by him of a proportional part of the principal of the annuity in the other cases not excepted, which include the annuities under consideration in the present action.

Section 1057 of the Civil Code prescribes that obligations arising from law are not presumed; that those *expressly* determined in said Code or in special laws are the only demandable ones, and that they shall be governed by the provisions of the laws which may have established them and by the provisions of Book IV in regard to what has not been prescribed by said laws. By *expressly* the code means *clearly, specifically, concretely, manifestly*.

The intention of the Legislature that the annuitant shall pay taxes on annuities which were not created between January 31, 1901, and March 10, 1904, is not clear, specific, concrete or manifest, and obligations arising from law are not presumed; that is, they cannot be deduced from mere conjecture and from the logical relation of some statutes to others.

The facts are stated in the opinion.

*Mr. José de Guzmán Benítez* for the appellant.

*Messrs. Antonio J. Amadeo* and *Eduardo Acuña Aybar* for the intervenor.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

On April 26, 1915, the Succession of José Gumersindo Zuazo y Valdés, represented by María del Mar, María de las Mercedes, María de los Remedios, María de la Concepción and Salvador Franco Oins, filed a complaint against Marcos T. Caneja in the District Court of San Juan, Section 1, praying for judgment against the defendant for the sum of $1,875 which he owed as the owner of house No. 10 San Sebastián Street, this city, from the rents of which, by a provision contained in the will made on July 28, 1854, by Zuazo y Valdés, the owner of the house at that time, there were to be paid $200 for masses for the repose of his soul and $100 for masses for the repose of the souls of his parents.

Marcos T. Caneja answered the said complaint denying the capacity of the plaintiffs to bring the aforesaid action, and then the Bishop of the Roman Catholic Apostolic Church of Porto Rico, Right Reverend William A. Jones, filed a motion for leave to intervene in the suit, which was granted, whereupon he filed a complaint as intervenor on October 29, 1915,

praying for judgment against the defendant for the sum of $1,280.53 as interest due up to the year 1914 on the annuities with which the said house No. 10 San Sebastián Street was charged, together with the interest accrued during the year 1915 until fully paid, with the costs, disbursements and attorney fees.

The intervenor alleges that house No. 10 San Sebastián Street is charged with the following annuities: One of 6,000 *macuquina pesos* in favor of pious works; another of 2,000 Spanish *pesos* in favor of the Reverend Carmelite Mothers; another of 200 Spanish *pesos* in favor of vacant chaplaincies, and another of 313 provincial *pesos* in favor of the Confraternity of Santa Rosa, all of which annuities bear 5 per cent interest per annum. That by a deed executed before Notary Francisco de la Torre on November 16, 1907, the defendant acquired the said property from the Succession of Hidalgo and acknowledged all of the said annuities, it being set out in the deed that the purchaser retained from the purchase price of the property the sum of $6,817, the amount of the annuities with which the property was charged after making the proper reduction based on the difference in exchange as existing at that time. That the defendant owes the plaintiff the sum of $1,280.53 as interest due up to the year 1914, which he has refused and still refuses to pay.

In his answer to the complaint the defendant admitted the existence of the said annuities on house No. 10 San Sebastián Street, of which he is the present owner, but alleged that after deducting the partial payments made by him and the discounts for taxes, the actual amount of interest due and payable by him, including that for the year 1915, is $839.35, which sum he had deposited, as shown by the accompanying papers, but that the plaintiff had refused to accept the amount so tendered after being notified of the deposit, on the ground that the interest due up to and including the year 1914 amounted to $1,280.53 and not $839.35; wherefore he prayed

for judgment sustaining the validity of the deposit, adjudging to the plaintiff the said sum of $839.35 in payment of the interest of 1914 and 1915, which sum had been deposited for that purpose, and ordering that the intervenor pay the costs of the suit and of the deposit proceeding, including $400 as defendant's attorney fees.

When the case was about to go to trial and before the introduction of the evidence, the attorney for the Succession of José Gumersindo Zuazo y Valdés withdrew his complaint by leave of the court, leaving the intervenor to prosecute his action of intervention.

After trial the court, on May 11, 1916, rendered judgment sustaining the complaint and adjudging that the defendant pay to the intervening plaintiff the sum of $1,280.53, as interest due up to the year 1914 on the annuities referred to in the complaint in intervention, without prejudice to the right of the plaintiff to recover the interest accrued subsequent to the filing of the complaint, with the costs against the defendant. From that judgment an appeal was taken to this court by the attorney for the defendant.

According to the appellant's brief, there is no dispute in this action as to any difference between the amount claimed by the plaintiff and that alleged by the defendant, the only difference being a small sum of $12.14, due undoubtedly to a difference in the value of Spanish currency at different times. The only real issue in the case is whether Marcos T. Caneja has the right to deduct from the interest on the said annuities the proportion of the taxes corresponding to the principal of said annuities, or, what is the same thing, whether the annuitant is required to pay the taxes on the principal of the annuities and, therefore, whether the grantor is entitled to deduct the amount of such taxes from the interest on the annuities.

We agree with the finding made by the lower court in its opinion, that neither the documentary nor the oral evidence

shows the obligation of the annuitant to pay the taxes on the annuities.

Nor does the law impose such obligation. It is true that, according to section 1525 of the Civil Code, the person paying the annuity is obliged to pay the taxes and other charges affecting the estate charged with the annuity, and that when he pays the income he may deduct therefrom the part of the charges to be paid by the annuitant. That provision of law is not absolute, but depends upon whether the annuitant is required to pay any charge. The annuitant who has intervened in this action is not charged with the payment of any tax or charge and consequently is not required to pay anything, therefore it follows that the person paying the annuity is not authorized to make the deduction referred to in section 1525 of the Civil Code.

Section 3 of the Internal Revenue Act of January 31, 1901, which became section 291 of the Political Code, approved in 1902, provides that liens and *censos,* the interest on which does not exceed 5 per cent per annum, shall be exempt from taxation, "provided the same are specially devoted to carry out testamentary will applying them to charitable or educational purposes." That exemption does not affect the annuities involved in this action, because it does not appear that they are to be devoted to charitable or educational purposes.

Section 298 of the Political Code of 1902 read as follows:

"Every mortgage, censo, deed of trust, contract or other obligation by which a debt is secured, shall, for the purposes of assessment and taxation, be deemed and treated as an interest in the property affected thereby. In case of debts so secured the value of the property affected by such mortgage, censo, deed of trust, contract or obligation, less the value of such security, shall be assessed and taxed to the owner thereof in the municipal district or other local division in which the property is situated. But no tax shall be paid by the mortgagee or creditor upon any such security which by clear and unequivocal covenant contained therein is made payable by the mortgagor or debtor, but the same in such case shall be taxable to and paid by

said mortgagor or debtor. The taxes so levied shall be a lien upon the property and security, and may be paid by either party to such security; but if paid by the owner of the property said taxes shall constitute a payment upon the debt and to the extent of such payment a full discharge thereof.''

That section was amended by the act of March 10, 1904, to read as follows:

''That all real property shall be assessed in the municipality in which the real property lies to the person who is either the owner *on* (or) in possession thereof on the first day of April (1904), and the person appearing of record on the first day of April shall be held to be the true owner thereof. No deduction shall be allowed on account of any debt secured by mortgage, censo, conditional sale (*venta con pacto de retro*), contract or other obligation upon said real property; except, however, where a mortgage, censo, conditional sale (*venta con pacto de retro*), contract or other obligation by which a debt is secured upon real property has been executed subsequent to January 31, 1901, and prior to the passage of this Act, and the obligation to pay the taxes thereon rests upon the mortgagee or holder of said mortgage, censo, conditional sale (*venta con pacto de retro*), contract or other obligation, then said mortgage, censo, deed of trust, contract or other obligation shall continue to be deemed and treated as an interest in the property affected thereby, and shall be assessed and taxed to said mortgagee or holder of said mortgage, censo, deed of trust, contract or other obligation, and the value of the property affected by such mortgage, censo, deed of trust, contract or other obligation, less the value of such security, shall be assessed and taxed to the owner thereof in the municipal district or other local division in which the property is situated; and the taxes so levied shall be a lien upon the property and security and may be paid by either party to such security, but if paid by the owner of the property said taxes shall constitute a payment upon the debt and to the extent of such payment a full discharge thereof.''

Section 298 of the Political Code, as amended by the act of March 10, 1904, was again amended by the act of September 3, 1910, but the only change made by the last amendment was ''that all real property shall be assessed in the municipality in which the real property lies to the person who is either the owner or in possession thereof on the fifteenth day of

January, and the person appearing of record on the fifteenth day of January shall be held to be the true owner thereof." In all other respects section 298 of the Political Code was re-enacted as amended by the act of March 10, 1904.

Considering the wording of section 298 as the final expression of the will of the legislative power, it does not charge the annuitant with the payment of any taxes; for in providing that in making the assessment no deductions shall be allowed in favor of the owner of the property for taxes, it clearly excepts only the annuities and other liens referred to which were created subsequent to January 31, 1901, and prior to March 10, 1904, when the amendment was approved, charging the annuitant with the obligation of paying the taxes in such excepted case. The said exception does not affect the annuities on which interest is claimed by the intervenor-appellee, for they were not created subsequent to January 31, 1901, and prior to March 10, 1904, when the amendment to section 298 of the Political Code was enacted. In the cases excepted the law provides that if the taxes are paid by the owner of the property, they shall constitute a payment on the debt and, to the extent of such payment, be a full discharge thereof. It does not appear that it was the intention of the Legislature that in the other unexcepted cases, which include the annuities under consideration in this case, the taxes paid by the owner of the property should also constitute a proportional payment by him on the principal of the annuities.

The obligation which the appellant seeks to impose upon the annuitant is not derived from the Civil Code nor from the Political Code. Section 1057 of the Civil Code provides that obligations arising from law are not presumed, and those *expressly* determined in said code, or in special laws, are the only demandable ones, and they shall be governed by the provisions of the laws which may have established them and by those of Book Fourth of the said code. By "expressly"

the code means *clearly, specifically, concretely, manifestly,* according to Q. Mucius Scaevola in commenting on article 1090 of the Spanish Civil Code, which is the same as section 1057 of the Revised Civil Code.

The intention of the Legislature that the annuitant shall pay the taxes on annuities which were created between January 31, 1901, and March 10, 1904, is not clear, specific, concrete, or manifest, and obligations arising from the law are not presumed—that is, according to Scaevola, they cannot be deduced from mere conjectures and by the logical relation of some statutes to others.

Therefore we are of the opinion that the defendant was obliged to pay to the representative of the Roman Catholic Apostolic Church of Porto Rico the amount sued for in this action, without making the deductions claimed for taxes— that is, $1,280.53 representing the amount of interest due up to the year 1914, and as he did not deposit the whole of this amount it is obvious that the deposit was insufficient at law for the purpose of extinguishing the obligation.

For the foregoing reasons the judgment appealed from should be

*Affirmed.*

Justices Wolf and Aldrey concurred.
Justices del Toro and Hutchison dissented.